Michael P. Balaban   State Bar No. 9370
LAW OFFICES OF MICHAEL P. BALABAN
10726 Del Rudini Street
Las Vegas, NV  89141
(702)586-2964
Fax: (702)586-3023

Attorney for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| KAREN SHIELDS,<br><br>       Plaintiff,<br><br>vs.<br><br>CREDIT ONE BANK, N.A.; CREDIT ONE FINANCIAL, a Nevada Corporation; SHERMAN FINANCIAL GROUP, LLC, a Delaware Limited Liability Company,<br><br>       Defendants. | CASE NO. 2:19-cv-00934-JAD-NJK<br><br>FIRST AMENDED COMPLAINT FOR DAMAGES AND OTHER RELIEF BASED UPON:<br><br>   DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT<br><br>JURY DEMAND |

Plaintiff KAREN SHIELDS ("Plaintiff" or "Shields") alleges as follows:

1.      This action is brought pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* (hereinafter "ADA").  Jurisdiction is predicated under this code section as well as 28 U.S.C. § 1331 as this action involves a federal question.

2.      At all relevant times, Defendants CREDIT ONE BANK, N.A.; CREDIT ONE FINANCIAL, a Nevada Corporation; SHERMAN FINANCIAL GROUP, LLC, a Delaware

Limited Liability Company (hereinafter "Credit One" or "Defendants") employed twenty (20) or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year, and they are therefore subject to the provisions of the ADA.

3.      Further at all relevant time, Defendants, and each of them, were an owner, a co-owner, an agent, representative, partner, joint venturer, and/or alter ego of its co-Defendants, or otherwise acting on behalf of each and every remaining Defendant and, in doing the things hereinafter alleged, were acting within the course and scope of their authorities as an owner, a co-owner, an agent, representative, partner, joint venturer, and/or alter ego of its co-Defendants, with the full knowledge, permission and consent of each and every remaining defendant, each co-Defendant having ratified the acts of the other co-Defendants.

4.      The events or omissions giving rise to Plaintiff's claim occurred in this judicial district, thus venue is proper here pursuant to *28 USC §1391(b)(2),* and the ends of justice so require.

**PARTIES**

5.      Plaintiff, Shields, is a citizen of the United States and a resident of the State of Nevada, County of Clark and City of Las Vegas.

6.      Plaintiff is informed and believes and thereon alleges that at all relevant times giving rise to the claims asserted, Plaintiff was employed in Las Vegas, Nevada by Credit One. Defendants are an employer within the meaning of *42 USC §12111(5)(A).*

**EXHAUSTION OF REMEDIES**

7.      Plaintiff timely filed a "Charge of Discrimination" with the Nevada Equal Rights Commission and Equal Employment Opportunity Commission ("EEOC") and was issued a Notice of Right to Sue by the EEOC on March 5, 2019, a copy of which is attached to Complaint as Exhibit "A".

**STATEMENT OF FACTS**

8.      Plaintiff was employed as a Human Resources Generalist I from November 13,

2017 to June 22, 2018.

9.     At the end of January 2018 it was suspected that Shields had bone cancer in her right arm and shoulder that had metastasized from somewhere else which resulted in a bone biopsy surgery being performed on April 20, 2018 in which a 10 centimeter skin incision created a widow into the bone measuring one centimeter in width by two centimeters in length for the purpose of harvesting tissue from Plaintiff's shoulder and arm.  Shields was thereafter discharged from the hospital on April 23, 2018.

10.     Thereafter on April 27, 2018 Shields' Orthopedic Oncology Surgeon/Doctor, Ronald Hillock, MD, completed a ADA Employee Accommodation Medical Certification Form which was provided to Plaintiff by Capital One, a copy of which is attached to Complaint as Exhibit "B".

11.     In the Form, Dr. Hillock indicated that Shields was substantially limited by a medical condition or accompanying treatment in the major life activities of sleeping, lifting, writing, pushing, pulling and manual tasks.

12.     Plaintiff was unable to fully use her right shoulder, arm and hand which included, among other things, lifting, pushing and pulling things with her shoulder, arm and hand, typing on a computer keyboard or otherwise, handwrite, or even tie her shoes or lift a hair dryer to dry her hair.

13.     The job description for the Human Resources Generalist I position lists physical requirements of frequently being required to use hands to finger, handle, feel and reach with hands and arms.  Further the job description states that the employee must occasionally lift and/or move up to 2 pounds.  A copy of the job description is attached to Complaint as Exhibit "C".

14.     Due to the surgery and recovery, Dr. Hillock indicated in the ADA Medical Certification Form that Shields was unable to perform the essential job functions of her job as Human Resources Generalist I with or without accommodations and Dr. Hillock initially stated that Shields would not be able to return to work until 8 weeks after the surgery or until around

June 20, 2018.  See the Work Summary Forms dated April 13, 2018 and May 11, 2018, collectively attached to the Complaint as Exhibit "D".

15.     These forms were forwarded to Defendants and on April 19, 2018 Shields was approved for an unpaid medical leave of absence as an accommodation under the ADA because she did not qualify for Family Medical Leave.

16.     On May 3, 2018, Shields received the results of the bone biopsy which found everything was benign.

17.     After her medical leave of absence started, Plaintiff received multiple texts, calls and emails stating how much she was missed and that they could not wait for Shields to return. Plaintiff even received a flower arrangement from the HR department after her bone biopsy was completed.

18.     During this time Shields was never contacted nor given information or costs regarding paying the employee portion of her monthly healthcare premium during the time she was on an unpaid leave of absence.  Plaintiff had to contact Credit One to coordinate the payment of her portion of the monthly healthcare premiums out of fear of losing her healthcare coverage which had become "past due."

19.     Also during this time Shields qualified for Short Term Disability but was denied Long Term Disability because she believes Capital One told the Long Term Disability carrier that Plaintiff did not have a job to go back to.

20.     On June 18, 2018, Dr. Hillock extended Shields' return to work date until July 12, 2018 and Plaintiff informed Defendant of this extension of her leave of absence.  See the Work Summary Form dated June 18, 2018 attached to Complaint as Exhibit "E" which says, "Patient has an appointment on 7/10 at which point a return to work date will be discussed.  Unable to work until appointment."

21.     During the extension of her leave of absence, Shields still was unable to fully use her right shoulder, arm and hand as set forth above.

4

22.     Thereafter on June 21, 2018 the HR Assistant Vice President called Plaintiff and asked her to come in to the Credit One HR office the next day.  Shields asked if she was being fired and was told no that they needed Plaintiff to come in the next day regarding her healthcare premium.

23.     On June 22, 2018 when Plaintiff arrived at the Credit One HR office she was told that she was being terminated due to the elimination of her position as a Human Resources Generalist I.

24.     In fact her job duties were just redistributed to other employees and this was just a way for Credit One to find a way to terminate Plaintiff's employment.  This was nothing more than a pretext for terminating Shields while her doctor still had her on medical leave and she still had limited use of her right shoulder, arm and hand.  In fact, during this time Defendant hired several other employees.

25.     Finally on June 30, 3018, Plaintiff's healthcare coverage was terminated so Shields had to discontinue her physical therapy sessions and had to cancel her last follow-up session on September 6, 2018 with Dr. Hillock.

## CAUSE OF ACTION

### (For Disability Discrimination and Failure to
### Accommodate in Violation of the ADA)

26.     Plaintiff Shields incorporates the allegations set forth in paragraphs 1 through 25, inclusive, as if fully set forth herein.

27.     As set forth hereinabove, at the end of January 2018 it was suspected that Shields had bone cancer in her right shoulder that had metastasized from somewhere else.  Although a bone biopsy showed everything was benign, this still was a physical impairment under the ADA.

28.     Thus Plaintiff's physical impairment substantially limited major life activities including sleeping, lifting, writing, pushing, pulling, manual tasks and working, as set forth in the ADA Employee Accommodation Medical Certification Form provided by her surgeon, Dr.

Hillock.

29.     Because of these physical impairment, Shield was unable to was unable to perform the essential job functions of her job as Human Resources Generalist I with or without accommodations until she was released by her doctor.

30.     Dr. Hillock initially stated that Shields would not be able to return to work until 8 weeks after her surgery on April 20, 2018 or until around June 20, 2018 but extended Plaintiff's return to work date until July 12, 2018 on June 18, 2018.

31.     During this time, Shields was unable to fully use her right shoulder, arm and hand which included, among other things, lifting, pushing and pulling things with her shoulder, arm and hand, typing on a computer keyboard or otherwise, handwrite, or even tie her shoes or lift a hair dryer to dry her hair.

32.     Thus because Shields' doctor said she could not go back to work until July 12, 2018 and working is a major life activity under the ADA [see *42 U.S.C.* §12102(2)(A)], Plaintiff was substantially limited in the major life activity of working, among other major life activities, and therefore was disabled under the ADA.

33.     Once Credit One determined Plaintiff was disabled under the ADA, they had a mandatory duty under the law to interact with Shields to find a reasonable accommodation(s).

34.     Although Defendants initially granted Plaintiff's leave of absence under the ADA until June 20, 2018 per her doctor's order, Credit One had a continuing duty under the ADA to extend Shields' medical leave of absence until she was able to return to her job unless it would result in an indefinite leave of absence or it would cause an undue hardship to Defendants.

35.     Here there are not facts which would even remotely support that a short extension to Plaintiff's medical leave of absence (for approximately 22 days) would result in an indefinite leave of absence or cause an undue hardship to Credit One.

36.     Thus because Defendants chose not to follow the existing law under the ADA and instead chose to terminate Plaintiff's employment on June 22, 2018, they are liable to Plaintiff for

damages under the ADA.

37.     As a direct, foreseeable, and legal result of the Defendants' disability discrimination and failure to accommodate Plaintiff's disability, Shields has suffered, overall economic losses in earnings, bonuses, job benefits and expenses, in an amount to be proven at trial which exceeds the minimum jurisdictional limits of this Court.

38.     As a further direct, foreseeable, and legal result of the Defendants' disability discrimination and failure to accommodate Plaintiff's disability, Shields has suffered indignity, mental anguish, humiliation, emotional distress, nervousness, tension, anxiety, change in sleep patterns, depression, inconvenience and loss of enjoyment of life and other pecuniary losses, the extent of which is not fully known at this time, for which Plaintiff seeks damages in an amount in excess of the minimum jurisdictional limits of the Court, also to be proven at the time of trial.

39.     In acting as they did, Defendants knowingly, willfully, and intentionally acted in conscious disregard of Plaintiff's rights.  Their conduct was despicable, has subjected Plaintiff to oppression, and it warrants an award of punitive and exemplary damages in favor of Plaintiff, in a sum according to proof at trial.

40.     Plaintiff claims the damages alleged herein, together with prejudgment interest as provided by law, in a sum according to proof at trial.

41.     Plaintiff has incurred, and continues to incur, attorney's fees in the prosecution of her claims.  Plaintiff therefore seeks an award of reasonable attorney's fees, in a sum according to proof at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Shields demands judgment against Defendants as follows:

1.     Declaring that the acts and practices complained of herein are a violation of the ADA;

2.     Enjoining and permanently restraining the violations by Defendants of the ADA;

3.     For back pay and front pay for overall economic losses in earnings, bonuses, job

benefits and expenses, according to proof at time of trial;

4.      For compensatory damages for mental and emotional distress, worry, indignity, mental anxiety, mortification, depression, shame, grief, inconvenience and loss of enjoyment of life and other pecuniary losses, all to Plaintiff's damage in a sum to be shown at the time of trial;

5.      For punitive damages;

6.      For attorney's fees and costs in an amount determined by the court to be reasonable;

7.      For pre-judgment interest on all damages; and

8.      For any other and further relief that the Court considers proper.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.


DATED:  8/8/2019               LAW OFFICES OF MICHAEL P. BALABAN


BY: /s/ Michael P. Balaban
    Michael P. Balaban
    LAW OFFICES OF MICHAEL P. BALABAN
    10726 Del Rudini Street
    Las Vegas, NV  89141

# EXHIBIT

# "A"

# NOTICE OF RIGHT
# TO SUE

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: Karen Shields<br>3830 Longs Peak Court<br>Las Vegas, NV 89103 | From: Los Angeles District Office<br>255 E. Temple St. 4th Floor<br>Los Angeles, CA 90012 |
|---|---|

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 34B-2018-01266 | Karrie L. Maeda,<br>State & Local Coordinator | (213) 894-1100 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*[signature]*

**Rosa M. Viramontes,**
**District Director**

March 5, 2019
*(Date Mailed)*

Enclosures(s)

cc: Barbara A. Hoerner, Esq.
V.P. Associate General Counsel
CREDIT ONE BANK
6801 S . Cimarron Rd.
Las Vegas, NV 89113

# EXHIBIT

# "B"

# ADA EMPLOYEE ACCOMMODATION MEDICAL CERTIFICATION FORM

**Americans with Disabilities Act (ADA) Employee
Accommodation Medical Certification Form**

FAX 951-9255

---

**SECTION I:  For Completion by the EMPLOYEE**

Your Name: _Karen_____ M_____ Argent_____
             First         MI              Last

Your Job Title: _Human Resources Generalist_

Your Regular Work Schedule: _8.00am - 5:00pm M-F_

Please see attached Job Description.

---

**SECTION II:  For Completion by the HEALTH CARE PROVIDER**

Instructions to the Physician

A request for a reasonable accommodation has been made by our employee, _Karen Argent_.
In order to assist with the interactive process, we are requesting you to provide feedback to the following
questions based on your medical expertise.  Please answer the questions on this form to help determine disability
and reasonable accommodation.

Background

An employee has a disability if he or she has an impairment that substantially limits one or more major life
activities, or has a record of such an impairment. "Substantially limits" under the ADA has been broadened to
allow someone with an impairment to be "regarded as" having a disability, even without the perception that the
impairment limits a major life activity, provided that the impairment does not have an actual or expected
duration less than or equal to six months.

The Americans with Disabilities Act (ADA) provides examples of "major life activities," including "caring for
oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking,
breathing, learning, reading, concentrating, thinking, communicating, working, and the operation of a major
bodily function, such as functions of the immune system, normal cell growth and digestive, bowel, bladder,
neurological, brain, respiratory, circulatory, endocrine and reproductive functions."

---

Provider Name (please print): _Ronald Hillock MD_

Type of Practice / Medical Specialty: _Orthopedic oncology surgeon_

Business Address: _1455 W Washington Ave Ste160 LV NV 89128_

Phone: _702 878 0393_        Fax: _702 258 5564_

(continued next page)

Americans with Disabilities Act (ADA) Employee
Accommodation Medical Certification Form

| SECTION II (cont.):  For Completion by the HEALTH CARE PROVIDER |
|---|

1.  Does the employee have a physical or mental impairment?  ___✓___ Yes  _____ No

2.  Please describe the employee's medical condition.

    S/P  R+  humerus  Surgery

3.  When did the medical condition begin?

    4/20/18

4.  How long is it expected to last?

    2 months

5.  Please describe the major life activities (e.g., breathing, eating, sleeping, walking, talking, manual tasks, etc.) that are substantially limited by the medical condition or accompanying treatment.

    Sleeping, lifting, writing, pushing, pulling
    manual tasks

6a.  Please review the attached job description. (If no job description is attached, please discuss the position with the employee to determine essential job duties and typical schedule.) Is the employee able to perform the essential functions of this position in a typical schedule with, or without, reasonable accommodation?

    _____ Yes, with reasonable accommodation      _____ Yes, without reasonable accommodation

    ___✓___ No, they are unable to perform their essential job functions with or without accommodation.

6b.  If *No*, how long will the employee remain unable to perform these job functions?

    ___8___ # of weeks      ___2___ # of months      _____ permanently.

6c.  If *Yes*, what adjustments to the work environment or position responsibilities would enable the employee to perform these job functions?

    _____

    _____

6d.  If *Yes*, how long will the employee need the reasonable accommodation to perform these job functions?

    _____ # of weeks      _____ # of months      _____ permanently.

7.  Additional Comments or Suggestions:

    _____

    _____

Healthcare Provider Signature: _____      Date: 4/27/18

# EXHIBIT

# "C"

# HR GENERALIST I
# JOB DESCRIPTION

# HR Generalist I
## Job Description

| Position Title: HR Generalist I | Grade Level: 13 |
|---|---|
| Department: Human Resources | Status: Exempt |
| Reports To: Human Resources Vice-President | Job Code: GENI |

## Position Summary

Provide professional employee relations intervention to facilitate internal communications and problem resolution. Work in concert with line management to ensure a work environment that attains high standards of productivity and morale. Coordinate employee benefits programs and optimally utilize budget resources.

## Summary of Essential Job Functions

- Provides employee counseling to resolve problems and facilitate internal communications.
- Assists with exit interviews and analysis to ensure management is proactive in responding to employee concerns and trends.
- Assists with responding to unemployment claims.
- Responsible for the administration of benefits.
- Conducts the benefits section of orientation.
- Distributes informational literature as well as verbal presentations to notify and advise employees of eligibility of benefit programs such as insurance plans, 401(k) plan, and other special employer-sponsored programs.
- Answers employee questions and assists employees with any issues they may have related to insurance and 401(k) issues.
- Coordinates enrollment sessions with 401(k) vendor.
- Conducts 401(k) testing and reporting.
- Analyzes Company benefit plans, policies, and laws concerning mandatory insurance coverage, prevailing practice information and other data to ensure legal compliance, competitive positioning and best utilization of benefits budgets.
- Modifies existing benefits programs by utilizing information gained through analysis findings.
- Plans and implements new benefit plans that are consistent with stated and practiced Company business strategy and needs assessments.
- Coordinates with insurance carriers to ensure that insurance claims are processed accurately and in a timely manner.
- Coordinates and participates in contract negotiations with vendors.
- Assists in planning, coordinating and implementing company employee functions and community service projects.
- Reviews attendance and performance related corrective action forms for accuracy and policy standards.
- Updates HR policies on the HR SharePoint site.

Revised 10/25/2017



- Coordinates and assists with development training.
- Acts as Payroll back up.
- Performs other special projects or assignments as requested.

## Position Requirements

- Bachelor's Degree preferred,
- Minimum of three or more years Human Resources experience preferably in credit card environment.
- Must possess exceptional organizational skills and demonstrated analytical ability.
- Strong verbal, written and interpersonal skills required.
- Advanced level of Microsoft Office with an emphasis in Microsoft Excel.
- Must possess excellent verbal and written communication, negotiation, problem resolution, coaching and group facilitation and project management skills required.
- Knowledge of current Human Resources legislation.

## Physical Requirements

The physical demands described here are representative of those that must be met by an employee to successfully perform the essential functions of this job. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions.

While performing the duties of this job, the employee is regularly required to sit. However, the employee may choose to stand and move within cubicle area. The employee is frequently required to use hands to finger, handle, feel, talk and hear; reach with hands and arms. Must possess the ability to effectively hear and communicate. The employee is occasionally required to stand and walk. The employee must occasionally lift and/or move up to 2 pounds. Specific vision abilities required by this job include close vision, peripheral vision, depth perception and ability to adjust focus.

Based on the Fair Labor Standards Act (FLSA), management has analyzed this position and determined it to be exempt.



# EXHIBIT "D"

# WORK SUMMARY FORMS DATED APRIL 13, 2018 AND MAY 11, 2018



NEVADA
Orthopedic & Spine Center

NORTHWEST LAS VEGAS
7455 W. Washington Ave Suite 160
Las Vegas, Nevada 89128

Phone: (702) 878-0393
www.nevadaorthopedic.com

HENDERSON
1505 Wigwam Pkwy Suite 330
Henderson, Nevada 89074

## Work Summary Form

Date: Friday, April 13, 2018          Patient Name: KAREN ARGENT          Patient ID#: ███7760

___ <u>Patient</u> has <u>missed work</u> today due to an appointment at our facility

___ <u>Patient is late</u> for work today due to an appointment at our facility

___ <u>Parent</u> has <u>missed work</u> today due to an appointment, <u>for their child</u>, at our facility

___ <u>Parent is late</u> for work today due to an appointment, <u>for their child</u>, at our facility

___ Excuse <u>Patient</u> absence on:
    Reason:

___ Excuse <u>Parent</u> absence on:
    Reason:

_x_ Unable to work from __4/20/2018____ to ___5/20/2018___
    Reason: due to surgery

___ May return to work on:
    ___ Full Duty     ___ Medium Duty     ___ Light Duty
    Restrictions:

RONALD W. HILLOCK MD



NEVADA
Orthopedic & Spine Center

NORTHWEST LAS VEGAS
7455 W. Washington Ave Suite 160
Las Vegas, Nevada 89128

Phone: (702) 878-0393
www.nevadaorthopedic.com

HENDERSON
1505 Wigwam Pkwy Suite 330
Henderson, Nevada 89074

## Work Summary Form

Date: Friday, May 11, 2018          Patient Name: KAREN ARGENT          Patient ID#: ▮▮7760

___ Patient has missed work today due to an appointment at our facility

___ Patient is late for work today due to an appointment at our facility

___ Parent has missed work today due to an appointment, for their child, at our facility

___ Parent is late for work today due to an appointment, for their child, at our facility

___ Excuse Patient absence on:
     Reason:

___ Excuse Parent absence on:
     Reason:

___ Unable to work from _____ to _____
     Reason:

_x_ May return to work on: 6/20/2018
     x__ Full Duty     __ Medium Duty     __ Light Duty
     Restrictions:          none

RONALD W. HILLOCK MD

# EXHIBIT

# "E"

# WORK SUMMARY FORM DATED JUNE 18, 2018



NEVADA
ORTHOPEDIC & SPINE CENTER

NORTHWEST LAS VEGAS
7455 W. Washington Ave Suite 160
Las Vegas, Nevada 89128

Phone: (702) 878-0393
www.nevadaorthopedic.com

HENDERSON
1505 Wigwam Pkwy Suite 330
Henderson, Nevada 89074

## Work Summary Form

Date: Monday, June 18, 2018      Patient Name: KAREN ARGENT      Patient ID#: ▮▮7760

___ Patient has missed work today due to an appointment at our facility

___ Patient is late for work today due to an appointment at our facility

___ Parent has missed work today due to an appointment, for their child, at our facility

___ Parent is late for work today due to an appointment, for their child, at our facility

___ Excuse Patient absence on:
Reason:

___ Excuse Parent absence on:
Reason:

_X_ Unable to work from _6/21/18_ to _7/12/2018_____

Reason: Patient has an appointment on 7/10 at which point a return to work date will be discussed. Unable to work unt appointment.

___ May return to work on:
___ Full Duty    ___ Medium Duty    ___ Light Duty
Restrictions:

RONALD W. HILLOCK MD