|   |   |
|---|---|
| Karen Shields, | Case No.: 2:19-cv-00934-JAD-NJK |
| Plaintiff | |
| v. | **Order Adopting Report and Recommendation and Granting Defendants' Motion to Dismiss** |
| Credit One Bank, N.A., et al., | **[ECF Nos. 20, 43]** |
| Defendants | |

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

Plaintiff Karen Shields sues her former employers, defendants Credit One Bank, Credit One Financial, and Sherman Financial Group, LLC, (together, the Bank) alleging that they failed to accommodate her need for medical leave under the Americans with Disabilities Act (ADA) and terminated her position as a pretext for their discrimination.[1] The Bank moved to dismiss her original complaint, and I granted its motion but gave Shields leave to amend.[2] The Bank now moves to dismiss her amended complaint,[3] and Magistrate Judge Nancy J. Koppe recommends that I grant that motion with prejudice because Shields failed to remedy the deficiencies in her original complaint.[4] Shields objects to that recommendation.[5] Having reviewed it and the parties' briefing, I find good cause to adopt the report and recommendation, so I grant the motion and dismiss this case with prejudice.

---

[1] ECF No. 16 (amended complaint).

[2] ECF No. 10 (hearing).

[3] ECF No. 20 (motion to dismiss).

[4] ECF No. 43 (report and recommendation).

[5] ECF No. 46 (objection to report and recommendation).

## Background[6]

**A.  Shields's employment and termination**

Karen Shields worked for Credit One Bank's human resources department from November 13, 2017, to June 22, 2018.[7] Her position required the physical use of her hands, fingers, and arms, and the ability to lift up to two pounds.[8] On April 20, 2018, Shields had a bone-biopsy surgery to determine whether she had bone cancer in her right arm and shoulder.[9] The Bank granted Shields eight weeks of unpaid medical leave under the ADA.[10]

A week after her surgery, Shields's orthopedic oncology surgeon, Dr. Hillock, completed an ADA Employee Accommodation Medical Certification Form and indicated that Shields was "substantially limited by a medical condition or accompanying treatment in the major life activities of sleeping, lifting, writing, pushing, pulling, and manual tasks."[11] Dr. Hillock also stated that Shields was "unable to perform essential job functions with or without accommodations" because of the surgery, so he directed that she stop working for eight-weeks, from April 20 to June 20, to recover from the surgery.[12] Shields claims that during this eight-week recovery period she was unable to fully use her right shoulder, arm, and hand to lift, push, or pull things, type, write, tie her shoes, or lift a hair dryer to dry her hair.[13]

---

[6] These facts come from the amended complaint's factual allegations, which I accept as true for purposes of this motion to dismiss.
[7] ECF No. 16 at ¶ 8.
[8] *Id.* at ¶ 13.
[9] *Id.* at ¶ 9.
[10] *Id.* at ¶ 15.
[11] *Id.* at ¶ 10.
[12] *Id.* at ¶¶ 11, 14.
[13] *Id.* at ¶ 12.

On May 3, Shields received the results of her bone biopsy surgery, which indicated that she didn't have bone cancer.[14] Shields informed the Bank of her results and told it that on June 18, Dr. Hillock extended her eight-week recovery period—April 20 to June 20—to July 12, giving her an extra three-weeks to recover.[15] Dr. Hillock indicated that Shields was unable to work until at least her next appointment on July 10, at which point he would discuss with her a new return-to-work date.[16] Shields alleges that during this three-week extension she was "still unable to fully use her right shoulder, arm, and hand."[17]

On June 18, the Bank's Vice President called Shields and told her that she needed to come in the next day to discuss her healthcare premium.[18] When she did, the Bank told her that it was eliminating her position and that she would be terminated as a result.[19] Shields claims that the Bank used the elimination of her position as a pretext to terminate her while she was on medical leave, noting that it redistributed her work to other employees and hired several other employees during this time.[20] As a result of her termination, Shields lost her healthcare coverage, discontinued her physical therapy, and canceled her follow-up appointment with Dr. Hillock.[21]

---

[14] *Id.* at ¶ 16.
[15] *Id.* at ¶ 20.
[16] *Id.*
[17] *Id.* at ¶ 21.
[18] *Id.* at ¶ 22.
[19] *Id.* at ¶ 23.
[20] *Id.* at ¶ 24.
[21] *Id.* at ¶ 25.

**B.      The Bank's first motion to dismiss**

A year after her termination, Shields sued the Bank for disability discrimination, retaliation, and failure to accommodate under the ADA. The Bank moved to dismiss Shields's complaint, arguing that she failed to establish that she was disabled within the meaning of the ADA and that its conduct violated the ADA.[22] On July 29, 2019, I heard the Bank's motion to dismiss, and during that hearing I explained to Shields's counsel that her complaint was rife with conclusory allegations and lacked specific facts to support each of her causes of action.[23] I granted the motion to dismiss with leave to amend, cautioning that the amended complaint must contain true facts about the nature, severity, and impact of Shields's condition and how it limited her major life activities during that three-week extension period from June 20 to July 12.[24] I also cautioned that Shields should delineate which facts support either her failure-to-accommodate or ADA-discrimination claims and to drop the retaliation claim if she did not have facts to support it.[25]

**C.      Magistrate Judge Koppe's report and recommendation**

The day after the hearing, Shields filed her amended complaint and the Bank promptly moved to dismiss it.[26] Having considered the parties' briefing, Magistrate Judge Koppe recommends that I grant that motion and dismiss Shields's amended complaint without leave to amend.[27] She reasons that, because the amended complaint fails to plead more than "a

---

[22] ECF No. 1 (original complaint); ECF No. 5 (first motion to dismiss).
[23] ECF No. 20-1 at 14 (transcript of the hearing).
[24] *Id.* at 17–18.
[25] *Id.* at 18.
[26] ECF Nos. 16, 20.
[27] ECF No. 43 at 7.

4

temporary, non-chronic impairment of short duration with little or no residual effects," it lacks "sufficient facts that describe the nature and severity and impact of her conditions" and "how [the alleged impairment] limits her major life activities, specifically during the period of June 20, 2018 to July 12, 2018."[28] Shields's only factual allegation for this three-week-extension period is a copy-and-paste statement from her doctor's note regarding the initial eight-week recovery period before June 20.[29] Judge Koppe concludes that this allegation "is not plausible" because it suggests that Shields's limitations had not changed in any way after the initial eight-week recovery period.[30] Finally, Judge Koppe also recommends that I dismiss Shields's amended complaint with prejudice because Shields had the opportunity to correct the court-noted deficiencies in her complaint but remains unable to do so.[31]

## Discussion

### I. Motion to dismiss standard

District courts employ a two-step approach when evaluating a complaint's sufficiency on a Rule 12(b)(6) motion to dismiss. The court must first accept as true all well-pled factual allegations in the complaint, recognizing that legal conclusions are not entitled to the assumption of truth.[32] Mere recitals of a claim's elements, supported by only conclusory statements, are insufficient.[33] The court must then consider whether the well-pled factual allegations state a plausible claim for relief.[34] A claim is facially plausible when the complaint alleges facts that

---

[28] *Id.* at 7.
[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).
[33] *Id.*
[34] *Id.* at 679.

5

allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.[35] A complaint that does not permit the court to infer more than the mere possibility of misconduct has "alleged—but not shown—that the pleader is entitled to relief," and it must be dismissed.[36]

## II. Standard of review for a magistrate judge's report and recommendation

When a party objects to a magistrate judge's report and recommendation on a dispositive issue, the district court must conduct a de novo review of the challenged findings and recommendations.[37] The district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge," "receive further evidence," or "recommit the matter to the magistrate judge with instructions."[38]

## III. ADA requirements for disability discrimination and failure-to-accommodate claims

The ADA prohibits discrimination against qualified individuals with a disability in employment matters.[39] To establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate that she: (1) is disabled within the meaning of the ADA; (2) is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) suffered an adverse employment action because of her disability.[40] "The ADA treats the failure to provide a reasonable accommodation as an act of discrimination if the employee is a 'qualified individual,' the employer receives adequate notice, and a

---

[35] *Id.*

[36] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[37] Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(B); Local Rule IB 3-2(b).

[38] 28 U.S.C. § 636(b)(1).

[39] 42 U.S.C. §§ 12112(a), 12132.

[40] *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012).

6

reasonable accommodation is available that would not place an undue hardship on the operation of the employer's business."[41] A person is considered "disabled"—as opposed to merely "regarded as" disabled—under the ADA if she has "a physical . . . impairment that substantially limits one or more major life activities" and "has a record of such an impairment."[42] "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, . . . and working."[43] "In determining whether an individual is substantially limited in a major life activity, [the Equal Employment Opportunity Commission's] guidance suggests that courts should consider: (i) the nature and severity of the impairment, (ii) the duration or expected duration of the impairment; and (iii) the permanent or long-term impact, or the expected permanent or long-term impact resulting from the impairment."[44]

## III. Shields fails to state a prima facie claim that she was disabled under the ADA.

Shields argues that she was disabled under the ADA because she had an impairment that substantially limited a major life activity: her ability to work.[45] The Bank responds that Shields's unidentified impairment doesn't meet the ADA's definition of disability because her alleged limitations were temporary, non-chronic residual effects from her bone-biopsy surgery.[46]

---

[41] *Snapp v. United Transportation Union*, 889 F.3d 1088, 1095 (9th Cir. 2018), *cert. denied sub nom. Snapp v. Burlington N. Santa Fe Ry. Co.*, 139 S. Ct. 817 (2019).

[42] 42 U.S.C. § 12102(1)(A); *Nunies v. HIE Holdings, Inc.*, 908 F.3d 428, 436 (9th Cir. 2018); *Kaplan v. City of N. Las Vegas*, 323 F.3d 1226, 1231 (9th Cir. 2003).

[43] *Nunies*, 908 F.3d at 436.

[44] *Curley v. City of N. Las Vegas*, No. 2:09-CV-01071-KJD, 2012 WL 1439060, at *3 (D. Nev. Apr. 25, 2012), *aff'd*, 772 F.3d 629 (9th Cir. 2014) (citing 29 C.F.R. § 1630.2(j)) (internal citations omitted); *see also Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 566 (1999) ("The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual.") (internal quotations and citations omitted).

[45] ECF No. 46 at 2.

[46] ECF No. 47 at 3 (response to objection to report and recommendation).

7

I previously explained to Shields that her amended complaint should explain her impairment during the three-week extension period at issue and "describe the nature and severity and the impact" of her impairment.[47] But Shields's amended complaint still lacks sufficient facts for this period.

Shields alleges that she was "still unable to fully use her right shoulder, arm and hand as set forth," but she does not describe the nature, severity, or long-term impact of the unstated impairment that required this extension.[48] She also alleges that she couldn't lift, push, or pull things, or type, or even tie her shoes, but this still does not state a plausible impairment or condition for the extension period.[49] She alleges that her doctor's note indicates that she needed an extension of her initial recovery period without explaining the cause for the extension, and omitting a discussion of her limitations during the extension period.[50]

Even if her allegations were sufficient to establish that she had an impairment during the extension period, Shields fails to state facts that plausibly show any permanent or long-term effects for her impairment.[51] Neither her claimed biopsy results, nor her doctor's notes show that she had a chronic condition before or following the biopsy surgery.[52] In fact, Shields undermines any claim of a long-term impact by claiming that there are no "facts [that] would

---

[47] ECF No. 20-1 at 18.

[48] *Id.* at ¶ 31.

[49] *Id.* at ¶¶ 12, 21; *see Curley*, No. 2:09-CV-01071-KJD, 2012 WL 1439060, at *3 (Courts consider: "(i) the nature and severity of the impairment, (ii) the duration or expected duration of the impairment; and (iii) the permanent or long-term impact, or the expected permanent or long-term impact resulting from the impairment" when determining whether a substantial limitation on a major life activity amounts to a disability under the ADA.)

[50] ECF No. 16 at ¶¶ 21, 31.

[51] *See Curley*, No. 2:09-CV-01071-KJD, 2012 WL 1439060, at *3.

[52] *See* ECF No. 16.

even remotely support that a short extension to [Shields's] medical leave of absence (for approximately 22 days) would result in an indefinite leave of absence . . . ."[53] Because Shields's amended complaint still lacks sufficient facts from which I can reasonably infer the condition that caused her doctor to extend her recovery period, or the effects of that condition, I conclude that Shields failed to plausibly state a claim for discrimination and failure to accommodate under the ADA. Accordingly, I grant the defendants' motion to dismiss.

**IV.     The dismissal is with prejudice.**

Having granted the defendants' motion to dismiss, I now consider whether to grant leave to amend or to dismiss Shields's amended complaint with prejudice. "The decision of whether to grant leave to amend . . . remains within the discretion of the district court, which may deny leave to amend due to undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment."[54] I cautioned Shields of the deficiencies in her original complaint, and she has failed to correct them with this amendment.[55] Because Shields again relied on her cancer-related limitations in her amended complaint, which by June 20 were no longer at issue, and she failed to plead additional facts to plausibly show that she was entitled to ADA protection during the extension period, I am persuaded that any further amendment would be futile.[56] Her amended complaint still lacks

---

[53] *Id.* at ¶ 35.

[54] *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (internal quotation and alterations omitted).

[55] ECF No. 20-1.

[56] *Id.* at 13.

sufficient allegations for this extension period.[57] I asked Shields and her counsel to "clean up the claim" meaning, she needed to "have facts that tied every element of a failure to accommodate in violation of the ADA claim," but she still muddles her causes of action.[58] Shields's failure to cure these deficiencies, despite having received specific directives from the court, leads me to believe that she lacks facts to state a plausible claim, so allowing her another opportunity would only cause undue prejudice to the defendants. So, I adopt the magistrate judge's report and recommendation and grant the defendants' motion to dismiss this case with prejudice.

**Conclusion**

IT IS THEREFORE ORDERED that the magistrate judge's report and recommendation **[ECF. No. 43] is ADPOTED** in full.

IT IS FURTHER ORDERED that the motion to dismiss **[ECF No. 20] is GRANTED** and **this case is DISMISSED** with prejudice. The Clerk of Court is directed to ENTER JUDGMENT ACCORDINGLY and CLOSE THIS CASE.

Dated: March 17, 2020

_____
U.S. District Judge Jennifer A. Dorsey

---

[57] *Id.*

[58] *Id.* at 18.